**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HENRY R. ORTIZ,<br>Plaintiff,<br>v.<br>STATE OF NEW JERSEY, *et al.*,<br>Defendants. | Civil Action No. 26-701 (MAS) (RLS)<br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Howell Township, John Leggio ("Leggio"), John Storrow ("Storrow"), John Yurgel ("Yurgel"), Andrew McCarthy ("McCarthy"), Corri Feazell ("Feazell"), and "Howell Police Sergeant (TBD)'s" (collectively, "Defendants") Motion to Dismiss (ECF No. 14) Plaintiff Henry Ortiz's ("Plaintiff") Complaint (ECF No. 1). Plaintiff opposed (ECF No. 17[1]), and Defendants replied (ECF No. 22). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, the Court grants Defendants' Motion to Dismiss.

## I. BACKGROUND[2]

### A. Factual Background

Plaintiff is a resident of Howell Township, New Jersey. (Compl. ¶ 6, ECF No. 1.) On October 24, 2025, contractors from Fortified Roofing arrived at Plaintiff's residence located at

[1] Plaintiff appears to have filed a duplicate opposition brief. (*See* ECF No. 27.) For clarity, the Court cites to Plaintiff's first filed opposition brief. (*See* ECF No. 17.)

[2] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

27 Long Road for roofing repair and replacement services while Plaintiff was present. (*Id.* ¶¶ 18, 19.) Throughout the course of the morning, various Fortified Roofing vehicles parked in front of or near Plaintiff's residence, as well as the residence where Plaintiff's neighbor, "Roxanne Pallett a/k/a Roxanne Carrion" ("Pallett"), resided. (*Id.* ¶¶ 20-26, 30-31.) At one point, one of the drivers was smoking a cigarette while unloading the materials. (*Id.* ¶ 22.)

Around 9:00 a.m., Pallett approached Plaintiff, "complain[ing] that the workers were smoking cigarettes on her property and being disrespectful." (*Id.* ¶ 26.) Plaintiff informed Pallett that only one driver had been smoking and Plaintiff instructed that individual to avoid Pallett's property. (*Id.*)

Around 10 a.m., McCarthy, an Officer with the Howell Police Department, arrived and informed Plaintiff that "someone had called the Howell Police Department to complain that [a] dumpster was blocking the roadway, but [McCarthy] confirmed that he personally did not observe any obstruction and indicated that it was not a problem" and left the scene. (*Id.* ¶¶ 32, 33.) A different contractor then parked in front of Pallett's residence, causing Pallett to again approach Plaintiff and complain that she had asked not to have anyone park in front of her residence. (*Id.* ¶ 36.)

Pallett subsequently returned and complained about the contractors' parking, stating, "[o]h yeah, well it's game on. Wait until my husband gets home." (*Id.* ¶ 38.) Plaintiff claims that he "reasonably perceived [this] statement[] as [a] credible threat[], particularly given [Pallett's] husband's background as an ex-military member and a New York City firefighter with Ladder Company 20[.]" (*Id.*) After discussing the morning's events with his wife, Plaintiff decided to call the police. (*Id.*)

At 12:16 p.m., Plaintiff called the Howell Township Police Department and reported the "harassment and Pallett's threatening statements." (*Id.* ¶ 40.) During his call with the dispatcher, Plaintiff indicated that "he was a licensed firearm owner and described lawful self-defense in the event of an attempted intrusion, without threatening any specific individual." (*Id.*) Two Howell police cars came to Plaintiff's residence, and Plaintiff "recounted the events and reiterated his knowledge of his constitutional rights, including his lawful right to defend himself against threats to his home." (*Id.* ¶ 41.) Approximately forty-five minutes later, McCarthy "instructed Plaintiff to approach his patrol vehicle, informed [Plaintiff] that he was under arrest," and arrested Plaintiff. (*Id.* ¶ 42.)

Plaintiff alleges that he was never advised of his Miranda rights and was coerced into signing documents he could not read because he did not have his glasses. (*Id.* ¶¶ 42-43, 48.) During this time, Plaintiff's wife called his cell phone twice, but Plaintiff was not permitted to answer. (*Id.* ¶ 44.) Approximately thirty minutes later, McCarthy allowed Plaintiff to briefly call his wife. (*Id.* ¶ 45.)

That afternoon, Plaintiff was transported back to his home by McCarthy, and shortly after, McCarthy and police officer Feazell "entered Plaintiff's home and confiscated Plaintiff's New Jersey Firearms [identification] card, three licensed handguns, one AR-15 style rifle, and all associated ammunition, without a warrant, consent, or exigent circumstances." (*Id.* ¶¶ 48-49.) Thereafter, Plaintiff contacted an attorney for representation and spoke with the attorney "regarding the events described[.]" (*Id.* ¶¶ 53-54.)

### B. Procedural Background

Plaintiff, proceeding *pro se*, filed his Complaint on January 22, 2026, asserting seven causes of action for: (1) unlawful arrest against McCarthy and Feazell ("Count One"); (2) false

imprisonment against McCarthy and Feazell ("Count Two"); (3) unlawful search and seizure against McCarthy, Feazell, and unnamed "supervisory officers" ("Count Three"); (4) deprivation of due process against State of New Jersey, County of Monmouth, and Howell Township ("Count Four"); (5) First Amendment retaliation against McCarthy and Feazell ("Count Five"); (6) municipal liability against Howell Township ("Count Six"); and (7) state law civil harassment against Pallett ("Count Seven"). (*Id.* ¶¶ 59-112.) Defendants filed the instant Motion to Dismiss (Mot. to Dismiss, ECF No. 14), Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 17), and Defendants replied (Defs.' Reply Br., ECF No. 22).

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure[3] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show

---

[3] All references to "Rules" or "Rule" hereafter refer to the Federal Rules of Civil Procedure.

that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III. <u>DISCUSSION</u>

Defendants move to dismiss Plaintiff's claims asserted against Defendants or, in the alternative, to stay the matter as to certain Defendants because Plaintiff's claims "are inextricably linked to criminal and civil cases which are pending in the Superior Court of New Jersey." (*See generally* Defs.' Moving Br., ECF No. 14-1.) For the reasons discussed below, the Court finds that the Complaint should be dismissed in its entirety.

### A. Claims Against Leggio, Storrow, Yurgel, and "Howell Police Sergeant (TBD)"

As an initial matter, the Court notes that Plaintiff names Leggio, Storrow, Yurgel, and "Howell Police Sergeant (TBD)" as defendants in this matter but fails to assert any cause of action against them. (*See generally* Compl.) Moreover, except for alleging who each of those parties is (*see id.* ¶¶ 11-14), Plaintiff's Complaint is devoid of allegations regarding those parties' involvement in the events giving rise to Plaintiff's claims (*see generally id*).

The Court, accordingly, dismisses the Complaint as to Leggio, Storrow, Yurgel, and "Howell Police Sergeant (TBD)."[4] *See, e.g.*, *Royal v. Rutherford Police Dep't*, No. 11-4862, 2020 WL 3496950, at *1 n.1 (D.N.J. June 29, 2020) ("Defendant Feliciano is only referred to once in the [operative] [c]omplaint and is not named in any causes of action. . . . As there are no claims stated against . . . Feliciano in the [operative] [c]omplaint, he will be dismissed from this matter.").

**B. Counts One and Two Asserted Against McCarthy and Feazell**

Plaintiff brings Counts One and Two against McCarthy and Feazell "in their individual capacities" alleging that they unlawfully arrested and falsely imprisoned Plaintiff "under color of state law." (Compl. ¶¶ 59-76.) Defendants argue that Plaintiff's claims for false arrest and false imprisonment should be dismissed pursuant to Rule 12(b)(6) because Plaintiff "simply asserts that his arrest was unlawful, but provides no specifics on which this Court can rely" to evaluate whether McCarthy and Feazell had probable cause to arrest Plaintiff. (Defs.' Moving Br. 10-11.)

"False arrest and false imprisonment are nearly identical claims, and are generally analyzed together." *Jones v. Somerset Cnty. Prosecutor's Off.*, No. 15-2629, 2015 WL 5248573, at *4 (D.N.J. Sep. 9, 2015) (quotation marks omitted) (quoting *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 571 n.8 (E.D. Pa. 2005)). They are distinct, however, in that "the basis for false arrest is the arrest itself, whereas the basis for false imprisonment is the detention that follows the false arrest." *Id.* (citation modified). "To state a claim for false arrest under the Fourth Amendment,

[4] Plaintiff also names Travis Clark ("Clark") as a defendant, but fails to assert any specific claim against Clark or allege any facts regarding Clark's involvement. (*See generally* Compl.) The Court, therefore, finds that the Complaint should be dismissed as to Clark for the same reasons it finds dismissal appropriate as to Leggio, Storrow, Yurgel, and "Howell Police Sergeant (TBD)." *See Malat v. Borough of Magnolia*, No. 19-14841, 2020 WL 2553858, at *2 n.3 (D.N.J. May 20, 2020) ("District courts may dismiss claims that do not state causes of action *sua sponte*." (citations omitted)); *Bintliff-Ritchie v. Am. Reinsurance Co.*, 285 F. App'x 940, 943 (3d Cir. 2008) ("The District Court has the power to dismiss claims *sua sponte* under Rule 12(b)(6).").

a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983[5] for false imprisonment based on a detention pursuant to that arrest." *Fearron v. Restuccia*, No. 20-14819, 2023 WL 2367679, at *6 (D.N.J. Mar. 6, 2023) (alteration in original) (quoting *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)). "An officer has probable cause to arrest when 'the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Torres v. Borough of Barrington*, No. 16-6134, 2017 WL 3189448, at *3 (D.N.J. July 27, 2017) (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)).

Here, Plaintiff alleges that he called the Howell Police to "file a harassment claim" against Pallett and, during that call, "informed the dispatcher that he was a licensed firearm owner and described lawful self-defense in the event of an attempted intrusion, without threatening any specific individual." (Compl. ¶¶ 39, 40.) Police officers subsequently arrived at Plaintiff's residence and Plaintiff spoke to them, recounting the events. (*Id.* ¶ 41.) Plaintiff alleges that approximately forty-five minutes later, McCarthy instructed Plaintiff to approach the patrol vehicle and Plaintiff was arrested. (*Id.* ¶ 42.) According to Plaintiff, McCarthy and Feazell "rel[ied] solely on allegations made by a private neighbor, . . . Pallett . . . who had a documented history of false statements and threats" and that Pallett's allegations "were insufficient to establish probable cause." (*Id.* ¶ 62.) The Complaint, however, does not allege any specific facts regarding the forty-five minutes leading up to the arrest (*see generally id.*), and instead only baldly alleges that Plaintiff was arrested "without a warrant and without probable cause" and that Pallett's statements

[5] Section 1983 operates as the procedural vehicle by which a plaintiff may bring a claim for violation of constitutional rights in federal court. *See* 42 U.S.C. § 1983.

were insufficient to establish probable cause (*id.* ¶¶ 42, 62). Without more, the Court finds Plaintiff's allegations to be conclusory legal assertions, and the Court need not consider them. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss. (citations omitted)).

The Court therefore finds that Plaintiff has failed to allege facts, when viewed in the light most favorable to Plaintiff, that could establish that his arrest was without probable cause. *See, e.g.*, *Fearron*, 2023 WL 2367679, at *6-7 (dismissing plaintiffs' false arrest and false imprisonment claims where they "plead[ed] no facts to support that [one of the plaintiffs] was either falsely arrested or falsely imprisoned" where complaint contained "bald legal assertion" that defendants lacked probable cause). Counts One and Two are, accordingly, dismissed.

### C. Count Three Asserted Against McCarthy, Feazell, and "Any Supervisory Officers Acting Under Color of Law"

Plaintiff brings Count Three against McCarthy and Feazell, along with other unnamed "supervisory officers acting under color of law, in their individual capacities," alleging a claim for unlawful search and seizure in violation of Plaintiff's Fourth Amendment rights. (Compl. ¶¶ 77-85.) Defendants argue that this Count should be dismissed because Plaintiff's allegations "deal[] in broad statements without factual support" and Plaintiff's allegation that the seizure of his firearms and property was without a warrant is "demonstrably false[.]" (Defs.' Moving Br. 11-12.)

In order to state a Section 1983 claim for unlawful search and seizure, a plaintiff must allege that: "(1) the actions of the police officers constituted a search or seizure within the meaning of the Fourth Amendment; and (2) the actions were unreasonable in light of the surrounding circumstances." *Parker v. Gainey*, No. 23-2102, 2025 WL 2062563, at *8 (W.D. Pa. July 23, 2025) (quoting *Balzora v. Balatgek*, No. 24-522, 2024 WL 625275, at *4 (E.D. Pa. Feb. 13, 2024)). "To

show personal involvement in the Fourth Amendment unreasonable search and seizure context, the plaintiff must allege that the defendant actively participated in the search." *Id.* (citing *Strunk v. E. Coventry Police Dep't*, 674 F. App'x 221, 225 (3d Cir. 2016)).

Here, Plaintiff alleges that "McCarthy and Feazell entered Plaintiff's home and confiscated Plaintiff's New Jersey Firearms ID card, three licensed handguns, one AR-15 style rifle, and all associated ammunition, without a warrant, consent, or exigent circumstances." (Compl. ¶ 49.) Plaintiff also claims that he was "denied meaningful due process, including notice, opportunity to be heard, or access to a judicial forum to challenge the seizure and obtain the return of his property." (*Id.* ¶ 82.) Plaintiff, however, provides no allegations regarding the underlying facts of this search and seizure or the surrounding circumstances, such that the Court cannot assess whether Plaintiff has a valid claim.[6] *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (citation omitted)).

The Court, therefore, dismisses Count Three.[7]

**D. Count Four Asserted Against the State of New Jersey, County of Monmouth, and Howell Township**

Plaintiff brings Count Four against the State of New Jersey, County of Monmouth, and Howell Township, "including their agents and officials, in their individual and official capacities,"

---

[6] The Court need not reach Defendants' argument regarding the copy of the October 24, 2025, Temporary Extreme Risk Protective Order (the "TERPO") and search warrant they attach to their motion or whether the Court can consider that document in connection with a motion to dismiss. (*See* Defs.' Moving Br. 12-13; TERPO & Search Warrant, ECF No. 14-2.) The Court, however, is concerned that Plaintiff's allegations that the search was conducted without a warrant are demonstrably false. Plaintiff is cautioned that, should he amend his Complaint, the allegations contained in the amended complaint must be true to Plaintiff's knowledge.

[7] To the extent Plaintiff alleges this claim against unnamed "supervisory officers acting under color of law" (*see* Compl. ¶¶ 77-85), such a claim also fails because the Complaint contains no allegations of the unnamed individuals' personal involvement, *see Parker*, 2025 WL 2062563, at *8.

alleging a violation of Plaintiff's procedural due process rights under the Fourteenth Amendment. (Compl. ¶¶ 86-93.) Specifically, he alleges that these defendants: (1) unlawfully arrested and detained him; (2) seized his legally-owned firearms and denied him an opportunity to contest the seizure; (3) denied him from contesting the seizure of his firearms, ammunition, and Firearms ID Card; (4) denied him access to his spouse and legal counsel; and (5) coerced him into signing documents that he could not read. (*Id.* ¶ 87.) Defendants contend that Plaintiff's due process claims are either redundant or do not fall within the scope of a Section 1983 claim. (Defs.' Moving Br. 14.)

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that[:] (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property[;]' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Plaintiff fails to adequately allege such a claim for the reasons noted below.

*First*, Plaintiff's Fourteenth Amendment due process claim must fail to the extent it is based on allegations that he was unlawfully arrested and detained or that the named defendants seized his legally-owned firearms, as those claims are properly raised under the Fourth Amendment. *See DeLade v. Cargan*, 972 F.3d 207, 213 (3d Cir. 2020) ("[A]ll claims of unlawful arrest and pretrial detention occurring before a detainee's initial appearance fall under the Fourth Amendment . . . . not [under] the Fourteenth Amendment."); *Morris v. United States*, No. 12-2926, 2014 WL 1272104, at *9 (D.N.J. Mar. 27, 2014) (noting that "[p]laintiff's claim is one of an unreasonable seizure and will be analyzed under the Fourth Amendment rather than under the due process clause of the . . . Fourteenth Amendment[]").

*Second*, to the extent Plaintiff's claim is based on an alleged denial of access to an attorney, Plaintiff alleges no such facts to support such a claim. (*See generally* Compl.) Rather, Plaintiff explicitly pleads that the day after his arrest, he spoke with an attorney regarding the events giving rise to this action. (*See id.* ¶ 54.) *Third*, Plaintiff fails to allege a denial of the opportunity to contest the seizure of his firearms or a "coercion into signing documents[,]" as he has not alleged facts to explain when or how the denial or coercion happened. (*See generally id.*) *Fourth*, Plaintiff claims that he was "denied access to his spouse" (*id.* ¶ 87) but also alleges that, less than thirty minutes after Plaintiff's wife called his cellphone, "McCarthy allowed Plaintiff a brief call to his wife" (*id.* ¶¶ 44, 45). Plaintiff, therefore, fails to articulate a constitutional right which he was deprived of.

Count Four is accordingly dismissed as to the State of New Jersey, County of Monmouth, and Howell Township.[8]

**E. Count Five Asserted Against McCarthy and Feazell**

Plaintiff brings Count Five, a First Amendment Retaliation claim, against McCarthy and Feazell. (Compl. ¶¶ 94-101.) Defendants argue in part that this claim fails because Plaintiff has failed to adequately plead a claim for First Amendment retaliation. (Defs.' Moving Br. 16-17.)

"To state a claim for First Amendment retaliation under Section 1983, a plaintiff must allege that: (1) he 'engaged in a protected activity'; (2) the 'defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his . . . rights'[9]; and (3) 'there was a causal connection between the protected activity and the retaliatory action.'" *N.J. Second Amend.*

[8] Because the Court may *sua sponte* dismiss claims, it finds that dismissal is appropriate as to the State of New Jersey and the County of Monmouth, even though those two defendants did not file a motion to dismiss. *See Malat*, 2020 WL 2553858, at *2 n.3; *Bintliff-Ritchie*, 285 F. App'x at 943.

[9] "There is no dispute that an arrest constitutes conduct 'sufficient to deter a person of ordinary firmness from exercising [his] constitutional rights.'" *Falcone v. Dickstein*, 92 F.4th 193, 210 (3d Cir. 2024) (citation omitted).

*Soc. v. Murphy*, No. 20-5228, 2021 WL 323723, at *4 (D.N.J. Jan. 31, 2021) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Here, Plaintiff alleges that McCarthy and Feazell arrested and detained Plaintiff for "report[ing] harassment and threats by his neighbor" and "express[ing] concern for his personal safety and lawful self-defense." (Compl. ¶¶ 95, 97.) Plaintiff alleges that his statements "includ[ed] reference to his lawful firearm ownership and hypothetical self-defense[.]" (*Id.* ¶ 96.) According to Plaintiff, McCarthy and Feazell arrested Plaintiff, which "chilled [his] exercise of free speech . . . and [McCarthy and Feazell] retaliated against him for lawful expression of his constitutional rights." (*Id.* ¶¶ 97. 98.)

The Complaint fails to adequately allege the elements of a First Amendment retaliation claim. *First*, Plaintiff must identify the protected activity that caused the alleged retaliation. *See George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013). The protected activity must be identified with some specificity. *See McDevitt v. Borough of Clementon*, No. 18-17092, 2020 WL 468405, at *10-11 (D.N.J. Jan. 28, 2020) (dismissing First Amendment retaliation claim premised on statements plaintiff made where plaintiff did not "provid[e] any particular statements he made"). Here, although Plaintiff generally claims he made statements regarding his "lawful firearm ownership and hypothetical self-defense" (Compl. ¶ 96), he does not specifically allege what statements he made. This does not allow the Court to discern whether Plaintiff engaged in protected activity.

*Second*, even assuming, *arguendo*, that Plaintiff has sufficiently pleaded facts to show that he engaged in a protected activity, he fails to allege facts that could demonstrate a causal connection between his protected activity and his arrest. *See N.J. Second Amend. Soc.*, 2021 WL 323723, at *4. Plaintiff, rather, merely states that McCarthy and Feazell's actions were "willful,

arbitrary, and retaliatory." (Compl. ¶ 99.) Such conclusory allegations will not suffice. *See Castro v. Debias*, 770 F. Supp. 3d 758, 777 (M.D. Pa. 2025) ("On the element of causation: . . . the motive must *cause* the injury. Specifically, [the motive] must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." (quoting *Nieves v. Bartlett*, 587 U.S. 391, 397-98 (2019))).

Because Plaintiff fails to adequately plead the elements of his First Amendment retaliation claim, the Court dismisses Count Five.

### F. Count Six Asserted Against Howell Township

Plaintiff brings Count Six against Howell Township alleging a claim under 42 U.S.C. § 1983 for municipal liability pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). (Compl. ¶¶ 102-07.) Defendants argue that this claim should be dismissed because Plaintiff "fails to identify a custom or policy which caused his alleged harm." (Defs.' Moving Br. 20.)

"To plead a municipal liability claim [pursuant to *Monell*], a plaintiff must allege that 'a [local] government's policy or custom . . . inflict[ed] the injury' in question." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (second, third, and fourth alterations in original) (citation omitted). "To satisfy the pleading standard, [the plaintiff] must [not only] identify a custom or policy, [but also] specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Furthermore, "[a]lthough a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss. A plaintiff must also allege that a policy or custom was the 'proximate cause' of his injuries." *Est. of Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). To meet this burden, a plaintiff may allege facts of an "'affirmative link' between the policy or custom and the particular

constitutional violation he alleges." *Id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). Additionally, the Supreme Court has recognized that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

Here, Plaintiff vaguely alleges that Howell Township "demonstrated deliberate indifference" by: (1) failing to adequately train police officers on procedures and constitutional rights; (2) maintaining a "custom, policy, or practice of retaliating against residents for engaging in constitutionally protected speech"; (3) "[a]llowing officers to act with impunity in violating residents' civil rights"; and (4) "[f]ailing to implement adequate internal reporting, oversight, and discipline mechanisms[.]" (Compl. ¶ 104.) Plaintiff does not allege any specific policy that Howell Township maintains. (*See generally* Compl.) Third Circuit precedent, however, explicitly requires a plaintiff to "specify what exactly that custom or policy was." *McTernan*, 564 F.3d at 658. Without more, Plaintiff's claim must fail.

The Court accordingly dismisses Count Six.

**G. Count Seven Asserted Against Pallett**

Plaintiff's only remaining claim is Count Seven, a state law claim for civil harassment, asserted against Pallett. (*See* Compl. ¶¶ 108-12.) Because the remaining claim is a state law claim against a non-diverse party, the Court "*must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Masco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (citations omitted). Here, the Court finds no such considerations that warrant exercising supplemental jurisdiction. *See Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (recognizing that district courts have discretion to dismiss state law claims when all other federal law claims have

been dismissed); *A.S. v. Ocean Cnty. Fire Acad.*, No. 19-11306, 2021 WL 1169013, at *4 (D.N.J. Mar. 26, 2021) (dismissing remaining state law claims because plaintiff did not provide reasons to exercise supplemental jurisdiction over them).

Count Seven is, accordingly, dismissed.

## IV. CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss is granted.[10] Plaintiff's Complaint is dismissed in its entirety. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: 9/3/2026

[10] The Court, therefore, need not reach Defendants' arguments regarding whether a stay is appropriate.